UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SIG SAUER, INC. </br></br>    Plaintiff, </br></br> v. </br></br> CYBERGUN, S.A., </br></br>    Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> )   Civil Action No. </br> ) </br> ) </br> ) </br> ) </br> ) |

## COMPLAINT

Plaintiff Sig Sauer, Inc. ("Sig Sauer") , by and through its counsel, McLane Middleton, Professional Association, complains against Defendant Cybergun, S.A. ("Cybergun") as follows:

### INTRODUCTION

Sig Sauer and Cybergun executed a license agreement granting Cybergun the license to use certain intellectual property rights owned by Sig Sauer in the manufacturing, distribution, advertising and sale of certain Cybergun products in exchange for the payment of a royalty on the net sales of those products. Cybergun has breached various provisions of the agreement, and as a result, Sig Sauer provided written notice to Cybergun on January 12, 2017 that it was terminating the agreement immediately in accordance with the agreement's termination clause. Sig Sauer seeks a declaration from this Court that the agreement was effectively terminated on January 12, 2017. Cybergun also has infringed Sig Sauer's trademarks by using them in connection with the advertising, promotion and sale of its products in violation of Sig Sauer's rights under federal and common law. Sig Sauer seeks damages and an injunction restraining Cybergun from manufacturing, selling, advertising or promoting any of its products that bear one

- 2 -

of Sig Sauer's trademarks and engaging in any other activity that infringes Sig Sauer's trademark rights.

## PARTIES

1. Plaintiff Sig Sauer, Inc. ("Sig Sauer") is a Delaware corporation with a principal place of business at 72 Pease Boulevard, Newington, New Hampshire 03801.

2. Defendant Cybergun, S.A. ("Cybergun") is a French corporation with a principal office at 9-11 rue Henri-Dunant, 91070 Bondoufle, France.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121 as it arises under the trademark laws of the United States.  This Court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 as the parties' citizenship is diverse and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

4. This Court has personal jurisdiction over Cybergun because it advertises and sells its products to individuals and business in New Hampshire and other states within the United States.  Cybergun also has transacted business with Sig Sauer within New Hampshire, is a party to a written contract with a corporation with executive offices and manufacturing facilities in New Hampshire, has had contacts with New Hampshire with respect to that contract, and this dispute, in part, arises out of that contract.

5. Venue is proper in the District of New Hampshire pursuant to 28 U.S.C. § 1391(b)(3).

FACTS

6. Sig Sauer is in the business of manufacturing, selling, exporting and distributing high-quality firearms and accessories.

7. Cybergun is in the business of manufacturing and selling air soft guns and electronic and non-electronic games and toys that consist of or use replicas of weapons, ammunition and projectiles.

*The Master License Agreement*

8. On October 1, 2001, Cybergun executed a Master License Agreement (the "MLA") with Sig Sauer's affiliate in Switzerland, S.A.T. Swiss Arms Technology AG ("S.A.T."). Pursuant to the MLA, S.A.T. gave Cybergun the license to use certain trademarks, designs and other intellectual property rights owned by S.A.T. in the manufacturing, distribution, advertising and sale of certain Cybergun products as enumerated in the MLA (the "Cybergun Products"). A list of the S.A.T. trademarks that Cybergun was granted the license to use was attached as Exhibit I to the MLA and consisted of the following: "SAUER", "SIG SAUER", "SIG PRO", "SWISS ARMS", and "MAUSER."

9. In exchange for the rights to use certain intellectual property owned by S.A.T., Paragraph 4 of the MLA required Cybergun to pay S.A.T. a royalty of the net sales of the Cybergun Products. The MLA required that those royalty payments be made on or before the thirtieth day of the first month of each calendar quarter.

10. Simultaneously with the payment of royalties, on or before the thirtieth day of the first month of each calendar quarter, Paragraph 4 of the MLA also required Cybergun to furnish S.A.T. with a "full and accurate statement, showing the number, description, [and] total net sales prices of the Cybergun Products sold during the preceding calendar quarter[.]"

11. Paragraph 16 of the MLA granted Cybergun the right to enter into sublicense agreements with third parties provided certain conditions were met, including that any sublicense received S.A.T.'s written approval. Paragraph 4 required Cybergun to pay a royalty of its net profits derived from sublicensing and to provide a sublicensing report with its quarterly statements.

12. Paragraph 2 of the MLA stated that Cybergun represents, warrants and covenants that it "shall observe any applicable legislation concerning Cybergun Products."

13. Paragraph 6 of the MLA sets forth requirements for the labeling of Cybergun Products with the S.A.T. marks. Specifically, the Cybergun Products must carry a label or tag or exhibit in some manner the licensed S.A.T. trademarks. Cybergun's written materials, such as its packaging, advertisements, catalogs, etc., must also contain the following notice: "Licensed Trademark of S.A.T. Switzerland."

14. On October 1, 2007, Cybergun and SAN Swiss Arms AG ("SAN"), the legal successor to S.A.T., executed an Amendment to Master License Agreement (the "First Amendment"). The First Amendment provided that all royalties shall be paid in U.S. Dollars. It also revised Cybergun's royalty payments to include different percentages for Cybergun's net sales in Europe and the United States, Asia and the rest of the world, and in Wal-Mart stores worldwide.

15. Paragraph 3 of the First Amendment expanded the definition of Cybergun Products to include certain accessory items, including goggles, holsters and targets, among others.

16. The First Amendment did not change Cybergun's obligation to provide quarterly statements and sublicensing reports with its royalty payments. Nor did the First Amendment

revise the requirements for the labeling of the Cybergun Products pursuant to Paragraph 6 or the requirement that Cybergun would observe applicable legislation pursuant to Paragraph 2.

17. The First Amendment provided that "[e]xcept as expressly amended hereby, the terms of the Agreement, as amended by the Amendment, shall remain in full force and effect."

18. On March 7, 2014, Cybergun, Sig Sauer, L&O Hunting Group Gmbh ("Hunting") and L&O Finance GmbH executed a Second Amendment to Master License Agreement (the "Second Amendment"). The Second Amendment split the MLA into two (2) separate MLAs. The first MLA was between Cybergun and Sig Sauer (the "Sig Sauer MLA") and covered the licensed "SIG SAUER" trademarks, "SIG SAUER" and "SIG PRO." The second MLA was between Cybergun and Hunting (the "Hunting MLA") and covered the licensed "MAUSER" and "SAUER" trademarks.

19. The Second Amendment relieved Cybergun of the obligation of paying one third of the royalties due during the preceding four (4) calendar quarters, i.e. 2013, and extended the payment term for the remaining two thirds of the royalties from 2013 to June 1, 2014 for the second third and December 1, 2014 for the final third. The Second Amendment did not alter the royalty percentages or otherwise revise the deadlines for payment.

20. Paragraph 2 of the Second Amendment further revised the definition of Cybergun Products to eliminate the accessory items that were added to that definition by the First Amendment.

21. The Second Amendment did not change Cybergun's obligation to provide quarterly statements and sublicensing reports with its royalty payments pursuant to Paragraph 4 of the MLA. Nor did the Second Amendment revise the requirements for the labeling of the

Cybergun Products pursuant to Paragraph 6 of the MLA or the requirement that Cybergun would observe applicable legislation pursuant to Paragraph 2.

22. The Second Amendment further provided that "[e]xcept as expressly amended hereby, the terms of the Master License Agreement as amended by the 1st Amendment shall remain in full force and effect."

*Cybergun's Breaches of the Sig Sauer MLA*

23. Contrary to the terms of the MLA, Cybergun has failed to provide Sig Sauer on or before the thirtieth day of the first month of each calendar quarter full and accurate statements showing the number, description and total net sales prices of the Cybergun Products sold during the preceding calendar quarter. For example, and without limitation, Cybergun provided only one statement to Sig Sauer for the entire year of 2015, despite repeated requests from Sig Sauer for quarterly statements.

24. Further, upon information and belief, the statements that Cybergun did provide are materially inaccurate as they under report the net sales of the Cybergun Products. For example, and without limitation, the statements do not include any sales of Cybergun Products sold outside of Europe and the United States, and grossly under report the net sales of Cybergun Products purchased from Wal-Mart. Upon information and belief, Cybergun has sold Cybergun Products outside Europe and the United States and has placed certain Cybergun Products for sale in thousands of Wal-Mart stores.

25. Cybergun also has failed to provide sublicensing reports on or before the thirtieth day of the first month of each calendar quarter as required by Paragraph 4.

26. Even though the MLA requires Cybergun to pay royalties quarterly, it has not made a royalty payment to Sig Sauer since October 2015. While Sig Sauer has not received full

and accurate statements from Cybergun accounting for its royalties, based on the reports Cybergun has submitted, its outstanding royalty payments total 101,647 EUROS for 2015 and 99,951 EUROS for the first three (3) quarters of 2016, not including interest.  Moreover, Cybergun has made all royalty payments in Euros, not in U.S. Dollars, as required by the First Amendment as of October 1, 2007.

27.     In addition, Cybergun has breached its obligation pursuant to Paragraph 2 to observe applicable legislation.  For example, Cybergun has failed to comply with the Tariff Act of 1930, 19 U.S.C. § 1304, by marking certain Cybergun Products as originating in New Hampshire, when in fact they were made elsewhere.  Further, Cybergun has violated federal trademark law, as described below, by infringing Sig Sauer's trademark rights.  Cybergun also has failed to follow the standards of the American Society for Testing and Materials (ASTM) by placing inaccurate and insufficient warning statements on certain Cybergun Products.

28.     Cybergun also has failed to properly mark the Cybergun Products in accordance with Paragraph 6 of the MLA.  Specifically, Cybergun has failed to label its products with the required "Licensed Trademark of SIG SAUER, Inc." despite being notified by Sig Sauer in 2016 that its markings were incorrect.

*Sig Sauer's Termination of the Sig Sauer MLA*

29.     Paragraph 8(a) of the MLA contains the following termination provision, which states, in pertinent part:

> S.A.T. shall have the right to terminate this License Agreement with immediate effect at any time upon written notice to CYBERGUN at any time, if:
>
> (i)     CYBERGUN shall fail to make any payment due hereunder, and if such default shall continue for a period of sixty (60) days after written notice of such default is received by

CYBERGUN; or in case CYBERGUN is in breach of any of its obligations as provided for in this Agreement.

30. In accordance with Paragraph 8(a), on January 12, 2017, Sig Sauer provided Cybergun with written notice that it was immediately terminating the Sig Sauer MLA as a result of Cybergun's breaches of the agreement.

31. Since the last royalty payment was made, Sig Sauer has requested the outstanding payments through written correspondence and through in-person meetings with Cybergun executives. Despite its efforts to collect the overdue royalties, and recent representations from Cybergun that it would make a partial payment against its extensive debt, no royalty payment has been received for the last five (5) quarters. To follow up its previous written correspondence, on December 5, 2016, Sig Sauer sent Cybergun written notice that it was terminating the Sig Sauer MLA due to Cybergun's failure to make proper and timely royalty payments. Cybergun responded that the December 5, 2016 letter was insufficient written notice to terminate the Sig Sauer MLA by reason of non-payment. The December 5, 2016 letter was supplemented by the January 12, 2017 correspondence, again notifying Cybergun that it was terminating the agreement due to, among other breaches of contract, Cybergun's nonpayment.

*Cybergun's Misuse of Sig Sauer's Intellectual Property and Unfair Competition*

32. The Sig Sauer brand is recognized worldwide through the use of a variety of legally-protected trademarks, which Sig Sauer uses in connection with the advertisement and sale of its products.

33. Sig Sauer is the owner of the following United States Federal Trademark Registrations:

| Mark | Registration No. | Classes | Registration Date |
|---|---|---|---|
| WHEN IT COUNTS® | 4108918 | Firearms | March 6, 2012 |
| NITRON® | 2820090 | Protective coatings; | March 2, 2004 |

|              |         | firearm component         |                    |
|--------------|---------|---------------------------|--------------------|
| SIG MCX®     | 4941446 | Firearms                  | April 19, 2016     |
| SIG SAUER®   | 1313360 | Pistols, Rifles Firearms  | January 8, 1985    |
| P226®        | 3408194 | Pistols                   | April 8, 2008      |
| P320®        | 4638690 | Pistols                   | November 11, 2014  |
| The SIG Logo | 4566873 | Firearms                  | July 15, 2014      |
| XFIVE®       | 4553152 | Firearms                  | June 17, 2014      |
| P228®        | 3564587 | Firearms                  | January 20, 2009   |
| SIG 516®     | 3985504 | Firearms                  | June 28, 2011      |
| SIG 566®     | 3462946 | Firearms                  | July 8, 2008       |
| SP2022®      | 3328977 | Pistols                   | November 6, 2007   |
| P210®        | 3055694 | Firearms                  | January 31, 2006   |
| P229®        | 3328976 | Pistols                   | November 6, 2007   |

34. Sig Sauer also has common law trademark rights to the following mark: P230

35. Sig Sauer has continuously used these trademarks since the date of first use in connection with the advertising and sale of its products worldwide.

36. While the MLA granted Cybergun a license to use SIG SAUER® in accordance with the terms of the agreement, it did not grant Cybergun a license to use any of the other registered or unregistered trademarks set forth above in any manner whatsoever.

37. Cybergun has used and continues to use Sig Sauer's registered and unregistered trademarks, including, but not limited to, those marks listed above on its products and in its promotional materials without Sig Sauer's authorization. For example, in its 2015 Catalog, Cybergun uses the WHEN IT COUNTS® and P226® marks to advertise its airgun products, including its BB airgun. *See* Cybergun 2015 Catalog, pgs. 61-62, attached hereto as <u>Exhibit A</u>. Cybergun's 2015 Catalog is available on the internet and distributed to the United States.

38. Cybergun also has incorporated the NITRON®, WHEN IT COUNTS®, and P226® marks into the packaging of its airgun products without Sig Sauer's authorization. For example, Sig Sauer is in possession of photographs of Cybergun airgun products taken at a Wal-Mart in the United States, the packaging for which contains the WHEN IT COUNTS® and

NITRON® trademarks.  *See* Photographs of Cybergun Products from Wal-Mart, attached hereto as <u>Exhibit B</u>.

39.  Cybergun also has continued to sell certain accessory items that it lost the rights to sell as of March 7, 2014, as set forth in Paragraph 2 of the Second Amendment.  Specifically, Cybergun's 2015 catalog advertises patches and flashlights with the SIG SAUER® trademark.  *See* Cybergun 2015 Catalog, pgs. 16 and 159, attached hereto as <u>Exhibit C</u>.  Cybergun does not have a license to use the SIG SAUER® trademark for those accessory products.

40.  In addition to its infringements of Sig Sauer's trademarks, Cybergun has also copied photographs of Sig Sauer's products, presumably from Sig Sauer's copyrighted website, and used them in its promotional materials, including its 2015 Catalog, without Sig Sauer's authorization.

## CAUSES OF ACTION

### <u>Count I</u>
**(Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114)**

41.  Sig Sauer hereby incorporates by reference Paragraphs 1 through 40 as if fully set forth herein.

42.  Cybergun, without authorization from Sig Sauer, has used and continues to use designations that are identical to, or substantially indistinguishable from, Sig Sauer's trademarks.

43.  Cybergun's unauthorized use of Sig Sauer's trademarks is intended to cause and has caused confusion, mistake or deception among consumers, the public and the trade as to whether Cybergun's infringing products originate from, or are affiliated with, sponsored by or endorsed by Sig Sauer.

44.  Cybergun has acted with knowledge of Sig Sauer's ownership of its marks and with deliberate intention to unfairly benefit from the incalculable goodwill symbolized thereby.

- 10 -

45. Cybergun's actions will cause imminent and irreparable harm and injury to Sig Sauer, and Sig Sauer is without an adequate remedy at law.

46. As a direct and proximate result of Cybergun's infringement, pursuant to 15 U.S.C. § 1117, Sig Sauer is entitled to injunctive relief, damages, lost profits, attorney's fees and other remedies as provided by law.

## Count II
### (Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1125(a))

47. Sig Sauer hereby incorporates by reference Paragraphs 1 through 46 as if fully set forth herein.

48. Cybergun, without authorization from Sig Sauer, has used and continues to use designations that are identical to, or substantially indistinguishable from, Sig Sauer's trademarks.

49. Cybergun's unauthorized use of Sig Sauer's trademarks is intended to cause and has caused confusion, mistake or deception among consumers, the public and the trade as to whether Cybergun's infringing products originate from, or are affiliated with, sponsored by or endorsed by Sig Sauer.

50. Cybergun has acted with knowledge of Sig Sauer's ownership of its marks and with deliberate intention to unfairly benefit from the incalculable goodwill symbolized thereby.

51. Cybergun's actions will cause imminent and irreparable harm and injury to Sig Sauer, and Sig Sauer is without an adequate remedy at law.

52. As a direct and proximate result of Cybergun's infringement, pursuant to 15 U.S.C. § 1117, Sig Sauer is entitled to injunctive relief, damages, lost profits, attorney's fees and other remedies as provided by law.

### Count III
### (Unfair Competition and False Designation of Origin
### Under the Lanham Act, 15 U.S.C. § 1125(a))

53. Sig Sauer hereby incorporates by reference Paragraphs 1 through 52 as if fully set forth herein.

54. Cybergun, without authorization from Sig Sauer, has used and continues to use designations that are identical to, or substantially indistinguishable from, Sig Sauer's trademarks.

55. Cybergun has intentionally engaged in conduct that constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact tending wrongfully and falsely to describe or represent a connection or affiliation between Cybergun and Sig Sauer in violation of 15 U.S.C. § 1125(a). The public is likely to be confused by Cybergun's use of such false designation of origin and false descriptions or representations regarding Cybergun's goods and Sig Sauer's goods.

56. Cybergun's actions will cause imminent and irreparable harm and injury to Sig Sauer, and Sig Sauer is without an adequate remedy at law.

57. As a direct and proximate result of Cybergun's unfair competition, pursuant to 15 U.S.C. § 1117, Sig Sauer is entitled to injunctive relief, damages, lost profits, attorney's fees and other remedies as provided for therein.

### Count IV
### (Common Law Trademark Infringement)

58. Sig Sauer hereby incorporates by reference Paragraphs 1 through 57 as if fully set forth herein.

59. Sig Sauer owns all rights, title and interest in and to the Sig Sauer trademarks, including all common law rights in such marks.

60. Cybergun's unauthorized use of Sig Sauer's trademarks is intended to cause and has caused confusion, mistake or deception among consumers, the public and the trade as to whether Cybergun's infringing products originate from, or are affiliated with, sponsored by or endorsed by Sig Sauer all in violation of Sig Sauer's rights at common law.

61. Cybergun has acted with knowledge of Sig Sauer's ownership of its marks and with deliberate intention to unfairly benefit from the incalculable goodwill symbolized thereby.

62. Cybergun's wrongful acts have caused and will continue to cause injury to Sig Sauer, including loss of future customers, dilution of its goodwill, confusion of potential customers, injury to its reputation and diminution in the value of its property.

63. Sig Sauer is entitled to damages, lost profits, and attorney's fees as a result of Cybergun's violations of Sig Sauer's common law trademark rights.

## Count V
### (Declaratory Judgment Under 28 U.S.C § 2201)

64. Sig Sauer hereby incorporates by reference Paragraphs 1 through 63 as if fully set forth herein.

65. An actual controversy exists, and the parties dispute, whether Sig Sauer has effectively terminated the MLA pursuant to Paragraph 8(a).

66. Paragraph 8(a) of the MLA allows Sig Sauer to terminate the Sig Sauer MLA with immediate effect upon written notice to Cybergun if Cybergun is in breach of any of its obligations under the agreement.

67. Cybergun has breached the Sig Sauer MLA by, among other acts or omission, (a) failing to provide Sig Sauer with full and accurate statements of the net sales of Cybergun Products for the preceding calendar quarter on or before the thirtieth day of the first month of each calendar quarter pursuant to Paragraph 4 of the MLA; (b) failing to make a royalty payment

in accordance with Paragraph 4 since October 2015; (c) failing to make royalty payments in U.S. Dollars; (d) failing to mark the Cybergun Products in accordance with Paragraph 6; and (e) failing to following legislation applicable to the Cybergun products.

68. Sig Sauer provided Cybergun with written notice that it was terminating the Sig Sauer MLA on January 12, 2017, as a result of Cybergun's breaches of the agreement.

69. Sig Sauer is entitled to a declaration from this Court that the Sig Sauer MLA was terminated as of January 12, 2017 and that Sig Sauer has no further obligations, duties or liabilities to Cybergun.

WHEREFORE, Plaintiff SIG SAUER, Inc. respectfully requests that this Court:

A. Preliminarily and permanently enjoin Cybergun from manufacturing, selling, advertising or promoting of any of its products that bear one of Sig Sauer's trademarks and engaging in any other activity constituting an infringement of any of Sig Sauer's rights to its trademarks;

B. Require Cybergun to recall from any distributors and retailers and to deliver to Sig Sauer for destruction or other disposition all remaining inventory that infringes upon Sig Sauer's trademarks, including all advertisements, promotional and marketing materials;

C. Award Sig Sauer actual damages, statutory damages and any additional profits attributable to Cybergun's infringement of Sig Sauer's trademark rights;

D. Declare that the Master License Agreement between Sig Sauer and Cybergun was terminated as of January 12, 2017;

E. Declare that, other than those duties, obligations and liabilities expressly set forth in the Sig Sauer MLA, Sig Sauer has no further duties, obligations or liabilities to Cybergun;

F. Award Sig Sauer its costs, expenses, and reasonable attorneys' fees; and

    G.    Grant such further relief that the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38 and 39, Sig Sauer demands a trial by jury on all issues triable as of right by a jury.

    Respectfully submitted,

    SIG SAUER, INC.

    By its Attorneys,

    McLANE MIDDLETON,
    PROFESSIONAL ASSOCIATION

Date: January 12, 2017    By: /s/ Mark C. Rouvalis_____
    Mark C. Rouvalis, N.H. Bar No. 6565
    Alexandra L. Geiger, N.H. Bar No. 20087
    900 Elm Street, P.O. Box 326
    Manchester, NH 03105-0326
    Telephone (603) 625-6464
    mark.rouvalis@mclane.com
    alexandra.geiger@mclane.com